IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SOUTHERN ILLINOIS ASPHALT COMPANY, INC., <br><br>Plaintiff, <br><br>vs. <br><br>LILIYA TURUBCHUK, Individually and as Personal Representative of the Estate of ALEKSEY TURUBCHUK, Deceased, VLADIMIR NEMTSOV, as Parent and Guardian of E. NEMTSOVA, a minor and V. NEMTSOV, a minor; LUDMILA NEMTSOVA, IRINA TURUBCHUK, LIBERTY MUTUAL FIRE INSURANCE COMPANY; CLARENDON NATIONAL INSURANCE COMPANY; LIBERTY INTERNATIONAL UNDERWRITERS, INC. and ACE AMERICAN INSURANCE COMPANY <br><br>Defendants. | Case No. 17-CV-405-SMY-DGW |

## **MEMORANDUM AND ORDER**

Pending before the Court are the motions to dismiss filed by Defendants Liberty International Underwriters, Inc. (Doc. 38), Clarendon National Insurance Company, Inc. (Doc. 40), and ACE American Insurance Company (Doc. 43). Plaintiff Southern Illinois Asphalt Company filed responses (Docs. 59, 60 and 61). For the following reasons, the motions are **GRANTED**.

### **Background**

In 2007, Liliya Turubchuk, individually and as personal representative of the estate of Aleksey Turubchuk, deceased; Vladimir Nemtsov, as parent and guardian of Elina Nemtsova and

Vladislav Nemstov; Ludmila Nemstova; and Irina Turubchuk (the "underlying Plaintiffs") filed a negligence action in this Court against E.T. Simonds Construction Company ("ETS") and Southern Illinois Asphalt Company, Inc. ("SIAC") seeking to recover for injuries resulting from a single vehicle accident that occurred on August 21, 2005 ("the underlying action") (*see Turubchuk v. E.T. Simonds Const. Co.*, 07-CV-216-WDS). The underlying Plaintiffs settled their claims against ETS and SIAC for the $1,000,000 policy limits of a Bituminous Casualty Insurance Company policy covering ETS and SIAC as a joint venture. The case was dismissed at the parties' request following the Court's approval of the minor settlement in February 2008 (*see Turubchuk v. E.T. Simonds Const.Co.*, 07-CV-216-WDS).

In May 2012, the underlying Plaintiffs filed a separate action seeking damages for ETS and SIAC's alleged failure to disclose their individual insurance policies in the underlying action ("the 2012 litigation") (*see Turubchuk et al v. E.T. Simonds Const. Co., et al*, 12-CV-594-SMY-DGW). At the time of the underlying action, ETS and SIAC were also individual insured by several policies. However, neither SIAC nor ETS disclosed their individual policies to the underlying Plaintiffs (*see Turubchuk et al v. E.T. Simonds Const. Co., et al*, 12-CV-594-SMY-DGW at Docs. 106-8, 106-9).

In the 2012 litigation, which is still pending, the underlying Plaintiffs maintain that if ETS and SIAC had disclosed their individual policies, they would not have settled for the "policy limits" of the only policy disclosed to them. They seek damages for intentional misrepresentation, fraudulent concealment, negligent misrepresentation and constructive fraud related to the failure of ETS and SIAC to disclose their individual insurance policies:

> In Count I, the underlying Plaintiffs allege that they "sustained actual damages resulting from the misrepresentations of [SIAC and ETS], in an amount to be proven at trial"

In Count II, the underlying Plaintiffs allege that they "sustained actual damages resulting from the concealment of material facts by [SIAC and ETS], in an amount to be proven at trial."

In Count III, the underlying Plaintiffs allege that they sustained actual damages resulting from the misrepresentations of [SIAC and ETS], in an amount to be proven at trial."

In Count IV, the underlying Plaintiffs alleged that they sustained actual damages resulting from the misrepresentations of [SIAC and ETS], in an amount to be proven at trial."

(*See Turubchuk et al v. E.T. Simonds Const. Co., et al*, 12-CV-594-SMY-DGW at Doc. 169, ¶¶ 36, 43, 50, and 56).

On April 19, 2017, SIAC filed the instant declaratory judgment action, seeking a declaration that each of its individual policy insurers owed a defense and indemnity to SIAC in connection with the 2012 litigation. In the alternative, SIAC seeks a stay of this matter pending the resolution of the trial in the 2012 litigation.

### *The Policies*

SIAC was individually insured by the following four policies:

- Liberty Mutual Fire Insurance Company (Liberty Mutual") Commercial General Liability Policy – provides a $2 million (each occurrence) limit. The Liberty Mutual Policy states, in relevant part:

SECTION I - COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
    (1)    The amount we will pay for damages is limited as described in Section Ill - Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

\* \* \*

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY
1. Insuring Agreement
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:
   (1) The amount we will pay for damages is limited as described in Section Ill -Limits Of Insurance; and
   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

Bodily injury is defined as: "Bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time."

(Doc. 43-1, pp. 78-79, 84-85).

- Clarendon National Insurance Company Coverage Plus Umbrella Liability Policy ("Clarendon") – provides a $2 million (each occurrence) limit. The Clarendon Policy is excess to the Liberty Mutual Policy and states in relevant part:

    A. COVERAGE
    SECTION I
    INSURING AGREEMENTS
    We will pay on your behalf the sums that you shall become legally obligated to pay as damages because of Personal Injury, Property Damage, or Advertising Injury, caused by an occurrence to which this policy applies during this policy period.
    Personal injury is defined as: "Bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time."

(Doc. 43-2, pp. 2-5)

- LIU Excess Liability Policy – provides a $25 million (each occurrence) limit. The LIU Policy is excess to the Clarendon Policy and states in relevant part:
    EXCESS LIABILITY POLICY
    \* \* \*
    INSURING AGREEMENTS
    I. COVERAGE

> We will pay on behalf of the Insured "loss" that result from an occurrence during the "policy period." We will pay "loss" in excess of the Underlying Insurance shown in Item 5 of the Declarations, but only up to an amount not exceeding our Limits of Liability as shown in Item 4 of the Declarations. Except for any definitions, terms, conditions and exclusions of this policy, the coverage provided by this policy is subject to the terms and conditions of the First Underlying Insurance Policy, as shown in Item 5. of the Declarations [the Clarendon Policy].

(Doc. 43-3, p. 16).

- ACE Excess Liability Catastrophe Policy – provides a $25 million (each occurrence) limit. The ACE Policy is excess to the LIU Policy and states in relevant part:
  > SECTION I
  > INSURING AGREEMENTS
  > A. COVERAGE
  > WE will pay on YOUR behalf the ULTIMATE NET LOSS (1) in excess of all UNDERLYING INSURANCE, and (2) only after all UNDERLYING INSURANCE has been exhausted by the payment of the limits of such insurance for losses arising out of OCCURRENCES that take place during OUR policy period and are insured by all of the polices designated in the Declarations as UNDERLYING INSURANCE. If any UNDERLYING INSURANCE does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance then WE shall not pay such loss.

(Doc. 43-4, p. 3).

## **Discussion**

To survive a motion to dismiss, the Complaint must give enough factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547 (2007). Allegations in the form of legal conclusions are insufficient. *McReynolds v. Merrill Lynch & Co.,* 694 F.3d 873, 885 (7th Cir. 2012) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009)), as are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Adams v. City of Indianapolis,* 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal,* 556 U.S. at 678).

An insurer's duty to defend is determined by comparing the allegations in the underlying Complaint to the relevant provisions of the insurance policy. *Health Care Indus. Liab. Ins.*

*Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 694 (7th Cir. 2009). "An insurer is obligated to defend its insured if the underlying complaint contains allegations that potentially fall within the scope of coverage." *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.,* 828 N.E.2d 1092, 1098 (2005). If any portion of the suit potentially falls within the scope of the coverage, the insurer is obligated to defend. *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.,* 860 N.E.2d 307, 315 (2006). An insurer may refuse to defend only if "it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Id.*

The Defendants assert that SIAC's Complaint fails to allege sufficient facts to state a claim for relief. The Court agrees. In the Complaint, SIAC requests that the Court "declare and adjudge" that each of the four insurance policies provides both a defense and indemnity to SIAC for the claims asserted in the 2012 litigation. However, the Complaint is devoid of any allegations that plausibly suggest that the policies would provide coverage to SIAC in the 2012 litigation. For that reason alone, this Court could grant Defendants' motions to dismiss.

Disregarding the deficiencies in the Complaint, in response to the motions to dismiss, SIAC maintains that although the underlying Plaintiffs' bodily injury claims were previously dismissed, those dismissed claims still trigger a duty to defend and potentially a duty to indemnify. SIAC further contends that the policies at issue cover suits seeking damages "because of bodily injury", which provides broader coverage than a policy covering damages "for bodily injury." SIAC asserts that it is, therefore, covered for the claims in the 2012 litigation because those claims "because of bodily injury."

SIAC's first argument is unavailing. "Once an amended pleading is interposed, the original pleading no longer performs any function in the case." *Wellness Community-National v.*

*Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995). Although the underlying Plaintiffs' original Complaint asserted claims for bodily harm, those claims were dismissed by the Court on September 18, 2013 (*see Turubchuk et al v. E.T. Simonds Const. Co., et al*, 12-CV-594-SMY-DGW at Doc. 30). The underlying Plaintiffs subsequently filed two amended complaints which omitted the dismissed claims. The operative complaint in the 2012 litigation asserts only four causes of action: intentional misrepresentation, fraudulent concealment; negligent misrepresentation; and constructive fraud. There are no claims for bodily injury and the relief requested stem from damages related to the alleged misrepresentation and fraud.

For its argument that it is entitled to coverage regarding Plaintiffs' misrepresentation and fraud claims because the claims arose "because of bodily injury," SIAC relies on two cases – *Cincinnati Ins. Co. v. H.D. Smith, L.L.C.*, 829 F.3d 771, 773-74 (7th Cir. 2016) and *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 616 (7th Cir. 2010). In *H.D. Smith,* West Virginia sued pharmaceutical distributors seeking to hold them liable for contributing to the state's epidemic of prescription drug abuse. 829 F.3d at 773. West Virginia alleged that the defendant distributors negligently cost the state millions of dollars every year in money spent caring for drug-addicted West Virginians who suffer drug-related injuries and could not pay for their own care. *Id*. One of the defendant distributors, H.D. Smith, was covered by a general commercial liability insurance policy issued by Cincinnati Insurance Company. *Id*. Under the policy, Cincinnati agreed to cover damages that H.D. Smith became legally obligated to pay "because of bodily injury." Cincinnati also agreed to defend H.D. Smith against any suit seeking such damages. *Id*. The policy defined "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id*. The phrase "damages because of bodily injury" included "damages claimed by any person or organization for care,

loss of services or death resulting at any time from the bodily injury." *Id*. After Cincinnati refused to defend the suit, it sought a declaration that the policy did not cover the suit. *Id*. The Seventh Circuit held that Cincinnati owed H.D. Smith a duty to defend because the West Virginia suit specifically alleged that West Virginia's citizens suffered bodily injuries and the state spent money caring for those injuries due to the defendants' negligent distribution of drugs. *Id*. at 774.

In *Medmarc,* the underlying suit alleged that Avent sold baby products that were contaminated with a toxic chemical. *See Medmarc,* 612 F.3d at 609. The underlying plaintiffs sought economic damages based on their alleged overpayment for the unsafe baby products, but expressly did not seek relief for any physical harm suffered by the products' users. *Id*. at 610. Avent contended that allegations in the underlying lawsuits that plaintiffs would not use the products out of fear of bodily injury was sufficient to allege a claim for damages "because of bodily injury," pursuant to the insurance policies. *See Id.* The Seventh Circuit rejected Avent's argument finding that the underlying plaintiffs sustained purely economic damages unrelated to bodily injury. The Court noted that the theory of relief in the underlying complaint was that the plaintiffs would not have purchased the products had Avent made certain information known to the consumers and therefore the plaintiffs were economically injured. *Id*. at 616.

Neither *H.D. Smith* nor *Medmarc* support SIAC's assertion that it is entitled to a defense. Unlike *H.D. Smith*, here, the underlying Plaintiffs do not assert any bodily injury claims arising from the failure of SIAC to disclose its individual policies. Rather, they allege that if SIAC had disclosed its individual policies, they would not have settled for the "policy limits" of the only policy disclosed to them. The damages sought are purely economic – unrelated to any bodily injury, but instead arising from the alleged intentional misrepresentation, fraudulent

concealment, negligent misrepresentation and constructive fraud related to the failure of SIAC to disclose its individual insurance policies. Similar to the *Medmarc* plaintiffs, the underlying Plaintiffs "theory of relief" relates to economic damages stemming from alleged fraudulent actions. Again, the theory of relief is not that a bodily injury occurred and the that damages sought flow from that bodily injury. *See also Momence Meadows*, 566 F.3d at 691 (finding no duty to defend whether the damages sought in the underlying fraud action stemmed from false filings and not from any alleged bodily injuries). For these reasons, Defendants do not owe SIAC a defense in the 2012 litigation.

Given that Defendants do not have a duty to defend the 2012 litigation, Defendants are likewise entitled to dismissal on the issue of indemnification. The duty to indemnify "arises only in circumstances of actual coverage; if the insurance policy does not cover what is alleged in the claim, the insurer will not have a duty to indemnify based on that claim." *Momence Meadows*, 566 F.3d at 693. Finally, given that there is no duty to defend or indemnify, staying this litigation pending the resolution of the 2012 litigation would be futile. Accordingly, Plaintiff SIAC's declaratory judgment action is **DISMISSED with prejudice** and its request for a stay is **DENIED**.

**IT IS SO ORDERED.**

**DATED: January 23, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**